UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED

2011 SEP -6  PM 1: 38

... US DISTRICT COURT
... DLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

LUIS W. LEBRON,
Individually and as Class Representative,
    Plaintiff,

vs.

DAVID E. WILKINS, in his official
capacity as Secretary of the Florida
Department of Children & Families

    Defendant.
_____/

### VERIFIED COMPLAINT: CLASS ACTION

This is a class action for declaratory and injunctive relief, alleging that the Defendant has violated the Fourth Amendment to the U.S. Constitution by requiring Plaintiff and a class of similarly situated persons to provide a urine sample for suspicionless drug testing as a condition for the receipt of Temporary Cash Assistance ("TCA") benefits to which they would otherwise be entitled. Plaintiff, LUIS W. LEBRON, individually and on behalf of a class of persons similarly situated, seeks declaratory and injunctive relief.

<u>Introduction</u>

Plaintiff is a thirty-five-year-old honorably discharged veteran of the United States Navy and a single father; while pursuing a college education, he resides with and cares for his son and disabled mother. In this class action, Plaintiff challenges Florida House Bill 353, codified at Fla. Stat. §414.0652 ("HB 353"), a law requiring applicants for welfare benefits under the Temporary Assistance for Needy Families ("TANF") program to provide a urine sample to

be screened for a variety of substances, and to pay for that screening.[1] The law was signed by Florida Governor Rick Scott on May 31, 2011, and has been in effect since July 1, 2011. To date, DCF has not finalized rules regarding the implementation and operation HB 353, but is operating under interim, non-final policies.

During a period of record unemployment, Florida has the dubious distinction of being the first state to institute across-the-board, suspicionless drug testing of all applicants for TCA. Despite applicants' dire financial straits, HB 353 also mandates that applicants pay for the testing. HB 353 strips Plaintiff and all TANF applicants of their Fourth Amendment right to freedom from unreasonable searches by mandating urine testing without any individualized suspicion of drug use. TCA applicants are required to undergo testing not because they are performing dangerous tasks that require sobriety, or because they are known, or even suspected drug users or abusers. The State requires invasive testing of bodily fluids merely because TCA applicants have fallen on hard times and need temporary help to tide them and their children over until they can once again be employed.

Plaintiff and other putative class members are suffering and will suffer serious violations of their constitutional rights and civil liberties if Defendant continues to enforce HB 353, as they are being denied and will continue to be denied the temporary cash assistance they need for day-to-day subsistence, and to which they would be entitled by law but for their refusal to waive their Fourth Amendment rights and to submit to the uniquely intrusive treatment by DCF.

---

[1] The State will reimburse those applicants who test negative.

## JURISDICTION AND VENUE

1. Plaintiff's claims arise under the Constitution and laws of the United States. This Court has jurisdiction over theses claims under 28 U.S.C. §§ 1331, 1343(a)(3), and authority to grant declaratory and injunctive relief under 28 U.S.C. § 2201-2202 and Fed. R. Civ. P. 57 and 65. The federal rights asserted by Plaintiff are enforceable under 42 U.S.C. § 1983.

2. Venue is proper in this Court under 28 U.S.C. § 1391(e). Plaintiff resides in Orlando, within the Middle District of Florida and the Orlando Division where he applied for, and was denied, assistance because of his refusal to surrender his Constitutional rights.

## PARTIES

3. Plaintiff Lebron is a thirty-five year old citizen of the United States and resident of Orlando, Orange County, Florida, who has so resided at the times material hereto. Plaintiff is an applicant for TANF assistance, is otherwise eligible to receive temporary cash assistance, is subject to suspicionless drug testing as a result of HB 353, and has refused to waive his Fourth Amendment rights by submitting to that testing.

4. Plaintiff is a veteran of the United States Armed Forces, having served in the United States Navy from 1999-2003, when he was honorably discharged.

5. A single unmarried father, Plaintiff is the sole custodian of his four-year old child, who was born in Kissimmee, Osceola County, Florida, on July 9, 2007; the child has continuously resided with Plaintiff since he was awarded custody in 2009.

6. Plaintiff and his child comprise the family group eligible for TCA benefits but have been denied those benefits based on Plaintiff's refusal to waive his constitutional rights.

7.   Plaintiff also resides with and cares for his disabled mother whose sole source of income is Social Security Disability benefits.

8.   Plaintiff is a student currently enrolled at the University of Central Florida, pursuing a bachelor's degree in accounting, expects to graduate in December, 2011, and plans to pursue advanced degrees in finance.

9.   In addition to serving honorably in the United States Navy, Plaintiff was previously employed in the private sector as an accounts payable coordinator, an inventory accountant, a customer service associate, a sales cash processor, and a night auditor, and worked as an intern at the Social Security Administration.

10.   In March 2011, before HB 353 was enacted, Plaintiff had applied for TCA and other benefits. That initial application was denied because his VA benefits disqualified him for financial reasons. In May 2011, also before HB 353 was enacted, Plaintiff applied for TCA benefits but again did not qualify because residual VA benefits remained, and he was not able to meet work registration requirements because of college attendance. Plaintiff filed a new application in July 2011, and currently meets all eligibility requirements other than submitting to drug testing. Comp. Ex. A.[2] While DCF was initially under the misimpression that Plaintiff failed to complete the necessary work requirements for TCA, the agency has subsequently confirmed that, except for the drug testing, Plaintiff meets all requirements for temporary cash assistance. *Id.*

11.   Although Plaintiff signed a release by which he consented to the drug testing, to the extent that form could be construed as voluntary and not coerced consent, by this

---

[2] Names of the minor child and Plaintiff's mother, as well as Plaintiff's address, phone number and email address have been redacted.

complaint, Plaintiff hereby revokes that consent. But for his refusal to waive his Fourth Amendment rights, Plaintiff and his dependent would be receiving, or would be about to receive, temporary cash assistance.

12. Defendant David E. Wilkins is sued in his official capacity as Secretary of DCF, which is an agency of the State of Florida created by statute for the principal purpose of providing social services to Florida residents. DCF is the agency responsible for the eligibility determinations of TANF applicants and distribution of TANF benefits in Florida. As such, under the plain language of HB 353, Defendant Wilkins is responsible for overseeing and enforcing the drug-testing regime mandated by HB 353.

13. At all times material to this action, Defendant Wilkins was acting under color of state law and his actions constitute state action. This Complaint seeks prospective injunctive and other equitable and ancillary relief against Defendant Wilkins in his official capacity.

## CLASS ACTION ALLEGATIONS

14. Plaintiff brings this action as a class action, pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, for injunctive and declaratory relief on behalf of himself and a class of all persons similarly situated.

15. The Plaintiff Class consists of all individuals residing in Florida who are applying for, or will in the future apply for, Temporary Cash Assistance, Florida's program to distribute TANF benefits, and who will be subject to Defendant's suspicionless drug testing as a result of HB 353.

16. According to the DCF website's "Standard Reports," in July 2011 there were 1,107 first-time applicants for TANF/TCA statewide.[3] All of these applicants will be subject to Defendant's suspicionless drug testing as a result of HB 353.

17. The requirements of Rule 23(a) and (b)(2) are met in that the class is so numerous that joinder of all members is impracticable; there are questions of law and fact common to the class; the claims of the representative parties are typical of the claims of the class; the representative parties will fairly and adequately represent the interests of the class because they are represented by counsel with extensive experience with class actions and lawsuits alleging constitutional violations, including claims under the Fourth Amendment; and the parties opposing the class have acted on grounds generally applicable to the class, thereby making appropriate final injunctive and corresponding declaratory relief with respect to the class as a whole.

18. Defendant's policy of requiring suspicionless drug testing of all TANF applicants in violation of the Fourth Amendment to the U.S. Constitution presents common questions of law and fact, which predominate over any questions affecting only individual members of the Plaintiff Class and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

19. The prosecution of separate actions by individual members of the Plaintiff Class would create a risk that inconsistent or varying adjudications with respect to individual members of the Plaintiff Class would establish incompatible standards of conduct for the parties opposing the Plaintiff Class.

---

[3] Figures for August 2011 are not currently available.

20. Plaintiff Lebron will fairly and adequately protect the interests of the members of the Plaintiff Class. Mr. Lebron's interests are consistent with and not antagonistic to the interests of the Plaintiff Class. Mr. Lebron has a strong personal interest in the outcome of this action and has no conflicts with members of the Plaintiff Class.

21. Plaintiff Lebron and the Plaintiff Class have been damaged as a result of the Defendant's wrongs alleged herein.

22. A class action is superior to all other available methods for the fair and equitable adjudication of the controversy between the parties. Plaintiff Lebron is informed and believes, and thereupon alleges, that the interests of members of the Plaintiff Class in individually controlling the prosecution of a separate action is low in that most members of the Plaintiff Class would be unable individually to prosecute any action at all. Plaintiff Lebron is informed and believes, and thereupon alleges, that most members of the Plaintiff Class will be unable to find counsel to represent them. Plaintiff Lebron is informed and believes, and thereupon alleges, that it is desirable to concentrate all litigation in one forum. It will promote judicial efficiency to resolve the common questions of law and fact in one forum, rather than in multiple courts.

### TANF and Florida's Temporary Cash Assistance Program

23. Temporary Assistance for Needy Families, created by the 1996 federal welfare reform law (Personal Responsibility and Work Opportunity Reconciliation Act), awards Florida and the other states with block grants to provide time-limited financial assistance, with work requirements for most recipients. The stated goals of TANF are to provide assistance to needy families so that children may be cared for in their own homes, to

promote work and marriage, to prevent out-of-wedlock pregnancies, and to encourage two-parent families. 42 U.S.C. § 601.

24. Florida distributes its TANF funds through the Temporary Cash Assistance Program administered by DCF. The stated goal of this program is to ensure that families are economically self-sufficient so as to require minimal governmental involvement. Fla. Stat. § 414.025.

### Florida's Program to Drug Test TANF Applicants

25. On May 31, 2011, Florida's legislature enacted HB 353, titled "Drug screening for applicants for Temporary Assistance for Needy Families." The law was signed by the Governor and became effective July 1, 2011. It is currently in effect. Ch. 2011-81, § 414.0652. A copy of the statute is attached as Ex. B.

26. To date, DCF has not finalized rules regarding the implementation and operation HB 353, but is operating under interim, non-final policies.

27. The original bill filed on January 24, 2011, limited mandatory testing to applicants "who [have] been convicted of a drug felony with the prior 3 years..." However, the bill was amended to extend the reach of the mandatory testing to all applicants regardless of known or suspected drug abuse.[4]

---

[4] While the challenged statute now covers all applicants for TCA, regardless of known or suspected drug abuse, DCF itself has debunked the myth that applicants for temporary public assistance have a high rate of illegal drug use or abuse; the agency recently reported that since July 1, 2011, out of 1,000 TCA applicants, only 2% tested positive for illicit drugs. That percentage is significantly lower than the generally recognized percentage of illicit drug users in the general population, namely 8.13 percent.

28. Pursuant to the statute, DCF "shall require a drug test . . . to screen each individual who applies for Temporary Assistance for Needy Families." HB 353 § 1. This includes all parents or adult caretakers in the group that applies for TANF benefits.

29. Under the statute, TANF applicants themselves must pay the cost of the drug testing. *Id.* If the test results are negative, the individual shall be reimbursed in the form of increased TANF benefits. *Id.* § 2(a).

30. The statute requires DCF to give notice to applicants that drug testing is a condition of receiving TANF benefits, which they can avoid only if they elect not to apply for benefits. DCF must also advise individuals before they are tested that they may disclose any medications that they are taking. *Id.* § 2(a-b).

31. As to the nature of the drug testing, the statute specifies that it be "consistent with" § 112.0455, the Drug-Free Workplace Act, HB 353 § 1, that applicants be "assure[d] a reasonable degree of dignity . . . consistent with the state's need to ensure reliability of the sample," *id.* § 1(2)(f), and that retesting may occur after the initial screening test, *id.* § 1(2)(g).

32. DCF has since established that there may be up to three levels of drug testing: (1) an initial drug screen, (2) a confirmatory test identifying the drugs present if the initial screen is positive, and (3) review by a medical review officer if the confirmatory test is positive, in order to verify whether the drugs are legitimately used as prescription or over the counter drugs. *See* DCF Memo re: Implementation of Drug Testing for Temporary Cash Assistance Applicants and Response to Test Results (6/24/11), Ex. C, 1-2. DCF offers

"bundled" screenings for all three levels of testing at DCF-approved locations throughout Florida, for a range of prices.

33. HB 353 includes no provisions restricting the use of the test results to TANF eligibility or protecting their confidentiality from third parties. In the face of the legislature's silence on what may be done with the test results, DCF requires that applicants acknowledge that any positive drug test results collected for TANF eligibility will be reported to the Florida Abuse Hotline, "for review to initiate an assessment or an offer of services." Ex. D.

34. Pursuant to the statute, DCF must bar individuals who have tested positive for a controlled substance from receiving TANF benefits for one year. For those who have tested positive a second time, DCF must bar them from TANF eligibility for three additional years. Individuals who have tested positive but have completed a treatment program may reapply, on a one-time-only basis, for TANF benefits in six months. HB 353 § 1(2)(h-j).

## CLAIMS FOR RELIEF

### FOURTH AMENDMENT VIOLATION; 42 U.S.C. § 1983how

35. Plaintiff incorporates by reference all of the foregoing allegations.

36. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." The Fourth Amendment's guarantees are applied to states through the Fourteenth Amendment.

37. The drug-testing regime mandated by HB 353 is a governmental search implicating the Fourth Amendment. The Supreme Court of the United States has held that suspicionless drug testing by the government is an unreasonable search that violates the

Fourth Amendment, except for a closely guarded category of cases limited to two situations. The first are those implicating substantial public safety concerns. The second are those cases affecting certain students in the public school system. Neither exception to the rule against suspicionless drug screening applies here.

38. HB 353 violates the Fourth Amendment rights of Plaintiff and the Plaintiff Class because it commands Defendant to conduct unreasonable and suspicionless searches of them, and all applicants for TANF benefits, without articulating any governmental interest that would constitute a special need. As such, the law is facially unconstitutional. 42 U.S.C. § 1983 provides Plaintiff and the Plaintiff Class with the vehicle to enforce their rights under the Fourth and Fourteenth Amendments.

### NOTICE OF COMPLIANCE WITH FED. R. CIV. P. 5.1(a)

39. Undersigned counsel for the Plaintiff hereby gives notice of compliance with Fed. R. Civ. P. 5.1(a) and §86.091, Florida Statutes (2010). The undersigned complied by serving the Attorney General of Florida with a copy of this Complaint by certified mail on September 6, 2011.

## RELIEF REQUESTED

Wherefore, Plaintiffs request the following relief:

a. A declaration that HB 353 violates the Fourth Amendment of the U.S. Constitution, as it requires, without any reasonable suspicion of unlawful drug use, drug screening of Plaintiff and all applicants for temporary cash assistance;

b. A preliminary[5] and permanent injunction enjoining Defendant from enforcing HB 353 and ordering Defendant to process all TANF/TCA applications, including Plaintiff's, without regard to the existing requirement that applicants submit to drug testing and provide proof of a negative result;

c. An award to Plaintiff of attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

d. Such other and further relief as this Court deems appropriate.

---

[5] Plaintiff, on behalf of himself and a class of persons similarly situated, has contemporaneously filed a Motion for Preliminary Injunction.

## PLAINTIFF'S VERIFICATION OF FACTUAL ALLEGATIONS

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED IN ORLANDO, FLORIDA THIS 2ND DAY OF SEPTEMBER, 2011.

_____
LUIS W. LEBRON

Dated: September 02, 2011

September 6, 2011

Respectfully submitted,

_____
Maria Kayanan (Fla. Bar No. 305601)
Trial Counsel
mkayanan@aclufl.org

Randall C. Marshall (Fla. Bar No. 181765)
Trial Counsel
rmarshall@aclufl.org
**ACLU Foundation of Florida, Inc.**
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
Tel: (786) 363-2700
Fax: (786) 363-3108

John Dingfelder (Fla. Bar No. 829129)
Trial Counsel
jdingfelder@aclufl.org
**ACLU Foundation of Florida, Inc.**
P.O. Box 25477
Tampa, FL 33622
Tel: (813) 287-1698
Fax: (813) 289-5694

Randall C. Berg, Jr. (Fla. Bar No. 318371)
RBerg@FloridaJusticeInstitute.org

Joshua A. Glickman (Fla. Bar No. 43994)
JGlickman@FloridaJusticeInstitute.org

Shawn A. Heller (Fla. Bar No. 46346)
SHeller@FloridaJusticeInstitute.org

**Florida Justice Institute, Inc.**
100 SE Second St., Ste. 3750
Miami, FL 33131-2115
Tel: (305) 358-2081
Fax: (305)358-0910

*Attorneys for Plaintiffs*