**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

LUIS W. LEBRON,
Individually and as Class Representative,

     Plaintiff,

vs.                               Case No. 6:11-cv-01473-MSS-DAB

DAVID E. WILKINS, in his official
capacity as Secretary of the Florida
Department of Children & Families

     Defendant.

_____/

**PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION
and incorporated
MEMORANDUM OF LAW**

Plaintiff, by and through undersigned counsel, renews his Motion for Class Certification,

pursuant to Federal Rule of Civil Procedure 23(b)(2) and Local Rule 4.04, M.D. Fla., and to

have the undersigned appointed Class Counsel pursuant to Rule 23(g). *See* Dkt. 16.

    **I.**      **Class Certification Will Avoid Unnecessary Litigation Over Potential
Mootness.**

Absent class certification, there is a palpable risk that this case may devolve into

ancillary and unnecessary litigation over mootness before this Court or the Eleventh Circuit

has the opportunity to enter a final judgment on the merits. *See* Dkt. 36 (Notice of Appeal of

the Preliminary Injunction). Where, as here, constitutional claims are raised by a plaintiff

who may lose individual standing, but where the pool of affected individuals remains large

and fluid, this Court has broad discretion to certify a class to ensure that the dispute remains

viable. *See, e.g.*, *Johnson v. City of Opelousas*, 658 F.2d 1065 (5th Cir. Unit A 1981) (class

certification appropriate in challenge to curfew ordinance affecting minors under seventeen).

Specifically, Plaintiff Lebron may obtain employment, and absent a finding that his

injury is by nature capable of repetition yet evading review, there is a substantial risk that his

claim will be challenged as moot, thereby creating a danger that the preliminary injunction

will be dissolved for reasons other than the merits. In this event, and as described in more

detail below, the State has indicated its intention to seek to dissolve the injunction.   In light

of this new evidence, and as the Fifth Circuit held in *Johnson*, the class must be certified

because "the substantial risk of mootness presented by the facts of this dispute [is] sufficient

to create a need for certification." 658 F.2d at 1070.

Moreover, in its Response in Opposition to Plaintiff's Motion for Class Certification,

the State erroneously relied on the district court's opinion in *Johnson*, 488 F. Supp. 433, 436

(W.D. La. 1980), to argue that class certification is not necessary, despite the Fifth Circuit's

reversal on that very point. Dkt. 30 at 3. In the "Memorandum of Law" section, *infra* at 12-

13, Plaintiff provides further compelling authority supporting this Court's discretion to

certify a class to avoid mootness, particularly in cases challenging conditions of access to

public benefits.

In the interest of efficiency and to avoid redundancy, Plaintiff incorporates the

allegations and arguments he previously filed in his Motion for Class Certification, Dkt. 16,

and largely confines the arguments in this Motion to those that have arisen since October 24,

2011, when the Court entered its Preliminary Injunction. Dkt. 33.

## II.   Notwithstanding the State's Appeal, This Court Retains Jurisdiction to Certify a Class.

This Court retains jurisdiction to consider this Renewed Motion for Class Certification. *See Green Leaf Nursery v. E.I. Dupont De Nemours & Co*., 341 F.3d 1292, 1309 (11th Cir. 2003) (noting that "an interlocutory appeal does not completely divest the district court of jurisdiction. The district court has authority to proceed forward with portions of the case not related to the claims on appeal"; consequently holding that district court had jurisdiction to rule upon motion that did not directly affect the issue pending before the appeals court); *Taylor v. Sterrett*, 640 F.2d 663 (5th Cir. March 25, 1981) ("[W]here an appeal is allowed from an interlocutory order, the district court may still proceed with matters not involved in the appeal."); *see also Ex parte Nat'l Enameling & Stamping Co*., 201 U.S. 156, 162 (1906) ("It was not intended that the cause as a whole should be transferred to the appellate court prior to the final decree. The case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken, unless otherwise specially ordered."). *See generally Griggs v. Provident Consumer Discount Co*., 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance-it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *Thompson v. RelationServe Media, Inc*., 610 F.3d 628, 638 n.14 (11th Cir. 2010) (quoting *Griggs*); *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251 (11th Cir. 2004) (same).

Thus, the question is whether the class certification issue is an "aspect[] of the case involved in the appeal [of the Preliminary Injunction]." *See id.*  Because class certification

would neither broaden nor constrict the Preliminary Injunction, it is not "an aspect of the case involved in the appeal" of that Order.  *See, e.g., Weingarten Realty Investors v. Miller*, __ F.3d ___, 2011 WL 5142183, at *1-2 (5th Cir. Nov. 1, 2011) ("Although appeals transfer jurisdiction from the district court to the appellate court concerning those aspects of the case involved in the appeal, the district court is nonetheless free to adjudicate matters that are not involved in that appeal.") (quotations and citations omitted); *see also Ball v. Beard*, 396 Fed. Appx. 826, 827 n.2 (3d Cir. 2010) (holding that appellate jurisdiction to review preliminary injunction order did not extend to portion of order denying without prejudice Plaintiff's motion for appointment of counsel); *Hoxworth v. Blinder, Robinson, & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) ("[A] pendent class certification order is not appealable under section 1292(a)(1) unless the preliminary injunction issue cannot properly be decided without reference to the class certification question. . . . Thus, a single order is not appealable in its entirety just because a portion of that order is appealable under section 1292(a)(1).") (citations omitted). *Cf. Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 233 (5th Cir. 2009) (where one party appealed the denial of a motion for class certification, and the district went on to address the merits of the case by deciding a motion for summary judgment, Fifth Circuit held that that the District Court had jurisdiction to decide the motion for summary judgment, despite the appeal of the class certification issue, as the merits of the case were not "involved in" the resolution of the class certification issue, as "[t]he findings made for resolving [the] class action certification motion serve[d] the court only in its determination of whether the requirements of Rule 23 [were] demonstrated. . . . Thus, there is

no issue on appeal of the summary judgment order that was "involved in" the denial of class certification.")  (quotations and citations omitted).

Accordingly, in support of his Motion, Plaintiff states:

1.     A Verified Complaint was filed on September 5, 2011, Dkt. 1, along with a Motion for a Preliminary Injunction and incorporated Memorandum of Law, Dkt. 2.

2.     The Verified Complaint was filed as a class action seeking declaratory and injunctive relief, alleging that the Defendant has violated the Fourth Amendment to the U.S. Constitution by requiring Plaintiff and a class of similarly situated persons to provide a urine sample for suspicionless drug testing as a condition for the receipt of Temporary Cash Assistance ("TCA") benefits to which they would otherwise be entitled.

3.     On October 24, 2011, this Court granted Plaintiff's Motion for Preliminary Injunction but, based "[o]n stipulation of the State that it will not seek to enforce the statute against others similarly situated to Plaintiff **until the matter is fully resolved**," the Court denied Plaintiff's Motion for Class Certification without prejudice. Dkt. 33 at 2 (emphasis added).

4.     On the evening of October 24, 2011, the State removed from its website all references to drug testing: http://www.dcf.state.fl.us/programs/access/tanfResources.shtml, and is apparently processing applications for TANF, post July 1, 2011, in compliance with the terms of this Court's Order. *See* Ex. A (October 28, 2011 Revised DCF Memorandum to ACCESS Managers and Offices).

However, the State's position, reflected by both Ex. A and Ex. B (Defendant's October 28 letter to Plaintiff's Counsel), is that Defendant Wilkins, in his official capacity as Secretary of Florida's Department of Children and Families ("DCF"), will cease compliance should the injunction be vacated before a determination on the merits. *See* Ex. B at 2 (emphases added).

5. Similarly, in its October 28, 2011, Revised Transmittal to ACCESS Florida Operations Managers and Program Offices, DCF reiterated the Agency's plans to revise its procedures for TCA applicants "until the preliminary injunction is dissolved." Ex. A at 1.

6. The State's repeated references to dissolution of the Preliminary Injunction are at odds with the Court's rationale for denying, without prejudice, Plaintiff's Motion for Class Certification. Plaintiff therefore respectfully moves to certify a slightly redefined class, consisting of "all persons residing in Florida who applied for, are applying for, or will in the future apply for, Temporary Cash Assistance ("TCA"), Florida's program to distribute Temporary Assistance for Needy Families ("TANF") benefits, and *who would, absent this Court's Order of October 24, 2011, be subject to Defendant's mandatory suspicionless drug testing as a result of Fla. Stat. §414.0652*." (emphasis indicating revised proposed class). The factual bases for his Motion are as follows.

7. According to DCF, "[i]n any one month in Florida, approximately 3,500 people first receive TANF cash benefits and approximately 3,500 leave the TANF cash benefits program." Dkt. 19-1 (Berner Affidavit) at ¶ 4. Moreover, "[n]ewly approved adults from July

2010 have received [TANF] benefits for an average of 4.8 months." Dkt. 22-1 (DCF presentation) at 13. The State filed these affidavits **after** Plaintiff moved for class certification.

8.      Thus, the group of individuals in Florida who apply for and receive TANF benefits is fluid; the length of time that TANF beneficiaries receive TCA, 4.8 months, is far shorter than the lifespan of federal civil litigation; and Plaintiff Lebron hopes not to rely on such benefits for long. Dkt. 2-1; Dkt. 22-3 (Plaintiff's Declarations).

9.      As the Court repeatedly and correctly observed During the September 26, 2011, hearing on Plaintiff's Motion for Preliminary Injunction, TANF recipients, including Mr. Lebron, may find employment that renders them ineligible for TANF, but may again become unemployed, and again become eligible for TANF.

10.     Perhaps more importantly, should Plaintiff Lebron become employed, as he intends, absent class certification there is little doubt that the State will move to vacate this Court's Preliminary Injunction and if successful, will resume the suspcionless drug testing of all TANF applicants mandated by the Legislature. Ex. A at p. 2. Although Plaintiff would, upon securing his hoped-for employment, argue that his injury is by nature capable of repetition yet evading review, *see, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975), and that his claim for injunctive relief would therefore not be moot, class certification would obviate the need for that determination. Absent class certification, a potential mootness dismissal would permit the state to reinstate mandatory drug testing. Should Plaintiff secure employment but later become unemployed and again qualify for TANF, he would have to begin this

litigation anew, challenging the same statute, with the same counsel, on behalf of the same individuals.

11.     In the Preliminary Injunction, the Court also ruled that "[e]ven if Plaintiff's consent [to the drug testing] were not revoked, the State's exaction of consent to an otherwise unreasonable search in exchange for TANF benefits would violate the doctrine of unconstitutional conditions." Dkt. 33 at 18. The State characterizes the Court's ruling as "dicta," Ex. A at 2, but the holding is an integral part of the Court's Fourth Amendment analysis. The finding that the "consent" is an unconstitutional condition applies not only to Plaintiff, but to all TANF applicants since July 1, 2011. In light of the Court's recognition that the consent to be tested is an unconstitutional condition, the State's earlier arguments that Plaintiff is not similarly situated to others who either failed the drug test or declined to take it are no longer viable.

12.     As class relief, Plaintiff seeks an order declaring that Fla. Stat. § 414.0652 violates the Fourth Amendment of the U.S. Constitution by requiring, without any reasonable suspicion of unlawful drug use, mandatory drug screening of the Plaintiff and all applicants for Temporary Cash Assistance. He has obtained a preliminary injunction on his own behalf, but will continue to seek a permanent injunction enjoining Defendant from enforcing section 414.0652 and ordering Defendant to process all TANF/TCA applications, including his own, without regard to the existing requirement that applicants submit to mandatory drug testing and provide proof of a negative result.

13.     This action satisfies all the prerequisites for maintenance of a class action, as set forth in Federal Rule of Civil Procedure 23(a).

14.     Class certification is sought pursuant to Federal Rule of Civil Procedure 23(b)(2), as Defendant has acted on grounds generally applicable to the Plaintiff Class, thereby making appropriate final injunctive relief with respect to the Plaintiff Class as a whole. *See* Dkt. 1 (Verified Complaint) at ¶¶ 16-22.

15.     Appointment of Class Counsel pursuant to Rule 23(g) is proper as the undersigned attorneys are experienced in handling class actions involved in constitutional challenges to policies, practices and statutes similar to the one at bar.

### Certificate of Counsel.

Pursuant to Local Rule 3.01(g), M.D. Fla., for a class certification motion, unlike other motions, undersigned counsel need not confer with opposing counsel in a good faith attempt to resolve the motion by agreement prior to filing. Nonetheless, Plaintiff did attempt to confer in good faith, specifically, during the telephonic case management meeting on Thursday, October 27, 2011, and again in writing on Tuesday, November 1, 2011, when he proposed that the State stipulate to class certification to avoid subsequent litigation about mootness and entry of final judgment to prepare the case for appeal. Ex. C (Plaintiff's 11/1/11 Email to Defendant's Counsel). Defendant was not interested in trying to resolve this Motion by agreement and, as reflected by Ex. B, continues to maintain that the members of the proposed class are not similarly situated to Plaintiff Lebron. *See* Ex. D (Defendant's Counsel's 11/3/11 response to Plaintiff's Email).

**Memorandum of Law**

As this Court held, Plaintiff is likely to succeed on his claim that section 414.0652 strips Plaintiff and all TANF applicants of their Fourth Amendment right to freedom from unreasonable searches by mandating urine testing without any individualized suspicion of drug use.

## I.   Proposed Plaintiff Class

Plaintiff Luis Lebron brings this action for declaratory and injunctive relief on his own behalf and on behalf of all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2). The class which Plaintiff Lebron seeks to represent now, following entry of the Preliminary Injunction, consists of the following:

> all persons residing in Florida who applied for, are applying for, or will in the future apply for, Temporary Cash Assistance ("TCA"), Florida's program to distribute Temporary Assistance for Needy Families ("TANF") benefits, *and who would, absent this Court's Order of October 24, 2011, be subject to Defendant's suspicionless drug testing as a result of Fla. Stat. §414.0652.*

(emphasis indicates revised class definition).

## II.   Legal Standard

The State's representation, in its Response to Plaintiff's original Motion for Class Certification, that it will "respect any declaration as to the constitutionality of section 414.0652" and "will apply such ruling to all persons similarly situated to Plaintiff," Dkt. 30 at 4, does not suffice to ensure that this case of national importance is decided on the merits rather than risk dismissal for mootness should Mr. Lebron secure employment. In fact the

principal cases that the State cites for its assurance of future compliance are either inapposite or support class certification.

The State erroneously relies on *Johnson v. City of Opelousas*, 488 F. Supp. 433, 436 (W.D. La. 1980) in arguing that class certification is not necessary. Dkt. 30 at 3. The Fifth Circuit reversed as an abuse of discretion that district court opinion denying class certification, because "the substantial risk of mootness presented by the facts of this dispute was sufficient to create a need for certification." *Johnson*, 658 F.2d 1065, 1070 (5th Cir. Unit A 1981). In *Johnson*, the Plaintiff and class members were teens challenging a curfew ordinance, and were likely to turn seventeen, which was the cut-off age for the curfew, before the litigation ran its course to a judgment on the merits. The looming specter of mootness therefore moved the Fifth Circuit to reverse the denial of class certification. Like the sixteen-year-olds in *Johnson* who would inevitably turn seventeen, Plaintiff Lebron will, at some point in the near future, inevitably fulfill his goal of securing employment.

The Fifth Circuit relied on *Sosna v. Iowa*, 419 U.S. 393 (1975); in *Sosna*, the plaintiff challenged a durational residency requirement that she could not meet when she filed the case, but which she had met by the time the case reached the Supreme Court. The district court had certified a class, and the Court noted that "the case before us is one in which state officials will undoubtedly continue to enforce the challenged statute and yet, because of the passage of time, no single challenger will remain subject to its restrictions for the period necessary to see such a lawsuit to its conclusion." *Id.* at 400. Because the plaintiff had a live controversy when the suit was filed and when the class was certified; because the controversy

over the residency restriction remained "very much alive for the class of persons" plaintiff had been certified to represent; and because the "issue sought to be litigated escapes full appellate review at the behest of a single challenger," the controversy was not moot. *Id.* at 401. *Sosna* illustrates the need for class certification where, as here, Plaintiff is likely to find a job and become ineligible for TANF before the litigation reaches final judgment.

Particularly in the context of public benefits, courts, in line with *Sosna*, have certified a class where the risk of mootness looms large. *See, e.g.*, *Greklek v. Toia*, 565 F.3d 1259, 1261 (2d Cir. 1977) (in a suit brought against state and county officials seeking to enjoin them from continuing to deny a class of "medically needy" persons the same deductions for work expenses in calculating net income as are permitted to applicants for AFDC, the district court did not abuse its discretion in certifying plaintiffs' class, since "only class certification could avert the substantial possibility of the litigation becoming moot prior to decision"); *Hoehle v. Likins*, 538 F.2d 229, 231 (8th Cir. 1976) (in challenge to AFDC allocation system, district court abused its discretion in denying class certification: "The risk of mootness is great in this litigation and the issue raised is important not only to appellee, but others similarly situated. Under these circumstances, the district court should have certified a class action to allow the plaintiff in this litigation to represent other persons receiving AFDC payments, similarly situated, whose benefits have been or will be curtailed because the household is considered 'shared' by reason of the presence of a third person therein, who cannot make any contribution to mutual expenses."); *Alexander A. v. Novello*, 210 F.R.D. 27, 34 (E.D.N.Y. 2002) (where plaintiffs were children with psychiatric disorders on waiting list for

12

residential placements, challenging delays in placement, class certification was appropriate to avoid mootness as named plaintiffs had obtained placements; plaintiffs sought injunctive relief to reform a continuing government policy or practice); *Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 391-92 (S.D.N.Y. 2000) (in challenge to food stamp and Medicaid program administration, where "case involves a fluid class where the claims of the named plaintiffs may become moot prior to completion of this litigation," class certification necessary to avoid the danger of individual plaintiffs' claims becoming moot before they could be finally adjudicated); *Jamroz v. Blum*, 509 F. Supp. 953, 957 (N.D.N.Y. 1981) (in challenge to state's practice of counting student loans and grants as income for determining eligibility for AFDC benefits, class certification proper to avoid mootness); *Adams v. Califano*, 474 F. Supp. 974, 979 (D. Md. 1979) ("The class action is especially appropriate where, as here, the claims of the members of the class may become moot as the case progresses."), *aff'd sub nom. Adams v. Harris*, 643 F.2d 995 (4th Cir. 1981). *See also Hamilton v. Hall*, No. 3:10-cv-355/MCR/EMT, 2011 WL 2161139, at *1 (N.D. Fla. 2011) (certifying class of prisoners because, "in the event the relief requested is warranted, there is no guarantee that any of the proposed class members will receive such relief in the absence of a class action") (*citing Johnson*, 658 F.2d 1065, 1070 (5th Cir. Unit A 1981)).

Cases on which DCF relied when responding to Plaintiff's Motion for Class Certification are inapposite. Dkt. 30 at 1-4. *See, e.g.*, *Kow v. New York Hous. Auth.*, 92 F.R.D. 73 (S.D.N.Y. 1981) (denying class certification where plaintiff could not identify similarly situated individuals: here the State has refused to provide the names of individuals whose appli-

cations were denied, *see* Ex. B at 3). Its other cases are procedurally distinct, as they were not in the Preliminary Injunction posture, but had reached final judgment, assuring uniform treatment of similarly situated individuals. *See, e.g.*, *Craft v. Memphis Light, Gas & Water Div.*, 534 F.2d 684, 686 (6th Cir. 1976) (affirming denial of class certification after trial); *United Farmworkers v. City of Delray Beach*, 495 F.2d 799, 801(5th Cir. 1974) (affirming denial of class certification after merits judgment; preliminary injunction had been consolidated with "full trial determination of the merits"); *Feld v. Berger*, 424 F. Supp. 1356, 1360 (S.D.N.Y. 1976) (summary judgment).

### III. The Proposed Plaintiff Class Satisfies the Prerequisites of a Class Action.

Plaintiff Lebron, as the putative class representative, and the Plaintiff Class amply fulfill the requirements for class certification.

#### A. The Plaintiff Class is so Numerous that Joinder of all Members is Impracticable.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "In order to satisfy this requirement, Plaintiffs need not allege the exact number and identity of the class members, but must only establish that joinder is impracticable through some evidence or reasonable estimate of the number of purported class members." *Avery v. Uniroyal Tech. Corp.*, No. 8:02-cv-2238T27MAP, 2005 WL 1205607, at *2 (M.D. Fla. May 20, 2005) (citing *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 427-28 (S.D. Fla. 1991)). The relevance of the numerosity requirement to class certification may be less significant where class wide discrimination has been alleged, as is the case here. *See, e.g.*, *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983); *Gurmankin v. Cos-*

*tanzo*, 626 F.2d 1132, 1134-35 (3d Cir. 1980); *Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 666 (M.D. Fla. 2000). The exact number or identity of the class members need not be specified. *Evans*, 696 F.2d at 930.

Here, the numerosity requirement is met, as there are an unknown but significant number of individuals whose Fourth Amendment rights have likely been violated by the State, and there are additional individuals whose rights would be violated by the Defendant in the same manner in the future, should the Preliminary Injunction be dissolved or vacated. "Each month, approximately 3,500 people first receive TANF cash benefits and approximately 3,500 leave the TANF cash benefits program." Dkt. 19-1 (Berner Affidavit) at ¶ 4. Moreover, "[n]ewly approved adults from July 2010 have received [TANF] benefits for an average of **4.8 months**." Dkt. 22-1 (DCF presentation) at 13 (emphasis added). The fluid nature of the class, and the inclusion in the class of future TANF applicants, whose identities obviously cannot now be ascertained through DCF's refusal to provide those names, *see* Ex. B at 3, makes joinder of all class members not just impracticable, but literally impossible. *Phillips v. Joint Legis. Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1022 (5th Cir. 1981) (noting that future class members are necessarily unidentifiable and therefore joining them is impracticable) (quoting *Jack v. Am. Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974) (*per curiam*)).

The numerosity requirement of Rule 23(a)(1) is clearly satisfied. With over three thousand applicants in any one month, coupled with the likelihood of that number increasing in this ever-worsening economy, the sheer monthly numbers satisfy the numerosity require-

ments of Rule 23(a)(1). Therefore, the actual number of individuals that fall within the Plaintiff Class definition is unknown and unknowable, but is beyond any number that could reasonably or practically be joined in a single lawsuit.

**B.   There are Common Questions of Law and Fact.**

The second requirement is that "there are questions of law or fact common to the class." Rule 23(a)(2), Federal Rules of Civil Procedure. In this case, the standardized conduct is the legal requirement of Fla. Stat. §414.0652 to drug test all TANF applicants without any suspicion whatsoever. There is no credible argument that the application of section 414.0652 to all TANF applicants to be drug tested does not meet the commonality requirement of Rule 23(a)(2). The controlling questions of fact and law in the case at bar are common to the entire class. As this Court held, the "consent" to drug testing required by Fla. Stat. §414.0652 is most likely an unconstitutional condition. Dkt. 33 at 18-19. That condition applies to all applicants: those who declined to take the test as well as those who took the test and either passed or failed.

Plaintiffs need only show a "common nucleus of operative facts" to satisfy Rule 23(a)(2). *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 581 (N.D. Ill. 2005); *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 562 (S.D.N.Y. 2004) ("[T]he commonality requirement does not require that each class member have identical claims as long as at least one common question of fact or law is evident."). Although class members may inevitably be affected in different ways by the drug testing policy, "factual differences among the claims of the putative class members do not defeat certification." *Cooper v. Southern Co.*,

390 F.3d 695, 713 (11th Cir. 2004) (*quoting Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)) (*overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006)). The controlling questions of fact and law in this case are common to the entire class, because all were, or will be, subject to the statute's unconstitutional condition. Accordingly, the commonality requirement of Rule 23(a)(2) is satisfied.

### C.  Plaintiff's Claims are Typical of Those of the Class.

The third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3), Federal Rules of Civil Procedure. "In many ways, the commonality and typicality requirements of Rule 23(a) overlap. Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification. Traditionally, commonality refers to the group characteristics of the class as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class. These requirements 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278-79 (11th Cir. 2000) (citations omitted).

A representative's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members and if his or her claims are based on the same legal theory. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332,

1337 (11th Cir. 1984); *Gonzales v. Cassidy*, 474 F.2d 67, 71 n.7 (5th Cir. 1973). As stated in

*Kornberg*, typicality exists when there is a:

> nexus between the class representative's claims or defenses and the common
> questions of fact or law which unite the class. A sufficient nexus is established
> if the claims or defenses of the class and the class representative arise from the
> same event or pattern or practice and are based on the same legal theory. Typ-
> icality however does not require identical claims or defenses. A factual varia-
> tion will not render a class representative's claim atypical unless the factual
> position of the representative differs markedly from that of other members of
> the class.

741 F.2d at 1337.

It matters not that some TANF applicants may have refused to take the drug test on

principle; that some may have not had the funds to pay for it; or that some may not have been

able to travel to a DCF-enrolled lab. *All* applicants were subject to the same unconstitutional

condition, and the "typicality requirement may be satisfied even if there are factual distinc-

tions between the claims of the named plaintiffs and those of other class members," *Santiago*

*v. Wm. G. Roe & Sons, Inc.*, No. 8:07-cv-1786-T-27MAP, 2008 WL 2953003, at *3 (M.D.

Fla. May 15, 2008) (quoting *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d

1566, 1569 n.8 (11th Cir.1992)). "A class representative must possess the same interest and

suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Bus-*

*by v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008).

Here, the claim of named Plaintiff Lebron shares the essential characteristic of the

claims of the proposed Plaintiff Class in that, as required by Fla. Stat. §414.0652, the named

Plaintiff and the members of the proposed Plaintiff Class were or, if the Preliminary Injunc-

18

tion is vacated or dissolved, will be required to take a drug test when applying for TANF funds despite no suspicion of drug use.

Typicality also requires that one or more of the named plaintiffs have standing to pursue the class issue. *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008). Defendant stipulated both before the September 26 hearing and in its Response to Plaintiff's Motion for Preliminary Injunction that Plaintiff Lebron has standing to receive TANF funds but for his refusal to submit to the drug test required of all TANF applicants after July 1, 2011 as a result of section 414.0652. Dkt. 19-1 (Berner Affidavit) at 5.

Plaintiff Lebron's Complaint concerns the same violation of rights as those which will be asserted by the Plaintiff Class. Defendant's past and future infringement of those rights, if the Preliminary Injunction is dissolved, does not depend on the individual circumstances of any particular TANF applicant. Requiring all TANF applicants to submit to a required drug test without any suspicion of drug use is a common scheme making class relief appropriate: it is, as this Court recognized, an unconstitutional condition. Dkt. 33 at 18-19. The typicality requirement is met.

### D.  Mr. Lebron Will Fairly and Adequately Protect the Interests of the Plaintiff Class.

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Rule 23(g) has similar requirement for the appointment of Class Counsel. "[C]lass counsel and the class representatives are adequate representatives of the class if (1) 'plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation' and (2) the plaintiffs lack 'interests antagonistic to

those of the rest of the class.'" *Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)); *Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir. 1985); *see Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

The undersigned Plaintiff's attorneys are qualified, experienced and able to conduct this action. The attorneys have previously litigated constitutional and statutory issues in federal and state court class actions and are familiar with the issues raised in this litigation. The law firms representing the Plaintiff and the proposed Class, Florida Justice Institute, Inc. and the American Civil Liberties Union Foundation of Florida, have litigated numerous class actions against various State of Florida agencies in state and federal court, and have the personnel and the resources to fully litigate this action. *See, e.g.*, *Hamilton*, 2011 WL 2161139, at *2 (Florida Justice Institute and ACLU Foundation of Florida designated class counsel); *see also Lawson v. Wainwright*, 108 F.R.D. 450, 457 (S.D. Fla. 1986) ("In the instant case, this Court has no doubt that Plaintiff [prisoner class] is represented by competent, diligent counsel [from the Florida Justice Institute]. The Court file reflects that Plaintiff and his counsel will zealously pursue the interests of the class.").The named Plaintiff has no interest antagonistic to or in conflict with the interests of the class members he seeks to represent. The named Plaintiff and the proposed Plaintiff Class share a common goal: a finding that the requirement of suspicionless drug testing of all TANF applicants violates the Fourth Amend-

ment. The representative Plaintiff will diligently and fairly protect and pursue the interests of himself and the Plaintiff Class.

### IV.      The Proposed Plaintiff Class Satisfies the Requirement of Rule 23(b)(2).

Certification under 23(b)(2) further requires a finding that:

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole...

Plaintiff has satisfied Rule 23(b)(2) through its satisfaction of Rule 23(a)'s requirements, as discussed *supra* and the factual allegations describing the discrimination faced by the Plaintiff Class as a result of Defendant's established policy requiring suspicionless drug testing of all TANF applicants pursuant to Fla. Stat. §414.0652. Defendant has clearly acted on grounds generally applicable to the Plaintiff Class as defined.

### V.      Conclusion

Wherefore, based upon the foregoing, Plaintiff respectfully requests that this Court find that the proposed Plaintiff Class meets the requisites of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, certify this action as a class action, with the class defined as Plaintiff has proposed above, and that undersigned counsel at the Florida Justice Institute and the ACLU of Florida Foundation be appointed Class Counsel pursuant to Rule 23(g).

Dated: November 4, 2011                    Respectfully submitted,

_s/ Maria Kayanan_

Maria Kayanan (Fla. Bar No. 305601)
Trial Counsel
mkayanan@aclufl.org

21

Randall C. Marshall (Fla. Bar No. 181765)
Trial Counsel
rmarshall@aclufl.org
ACLU Foundation of Florida, Inc.
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
Tel: (786) 363-2700
Fax: (786) 363-3108

John Dingfelder (Fla. Bar No. 829129)
Trial Counsel
jdingfelder@aclufl.org
ACLU Foundation of Florida, Inc.
P.O. Box 25477
Tampa, FL 33622
Tel: (813) 287-1698
Fax: (813) 289-5694

and

Randall C. Berg, Jr. (Fla. Bar No. 318371)
RBerg@FloridaJusticeInstitute.org

Joshua A. Glickman (Fla. Bar No. 43994)
JGlickman@FloridaJusticeInstitute.org

Shawn A. Heller (Fla. Bar No. 46346)
Sheller@FloridaJusticeInstitute.org

Florida Justice Institute, Inc.
100 S.E. Second St., Ste. 3750
Miami, FL 33131-2115
Tel: (305) 358-2081
Fax: (305)358-0910

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 4, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which automatically serves all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


By: s/ Maria Kayanan