UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Orlando Division

Case No. 6:11-cv-01473-MSS-DAB

LUIS W. LEBRON,

Individually and as Class Representative,

Plaintiff,

vs.

DAVID E. WILKINS,

in his official capacity as
Secretary of the Florida
Department of Children & Families,

Defendant.
_____/

**STIPULATION OF UNDISPUTED FACTS**

Plaintiff LUIS W. LEBRON, Individually and as Class Representative, and Defendant DAVID E. WILKINS, in his Official Capacity as Secretary of the Florida Department of Children & Families ("DCF"), through their undersigned counsel, respectfully request that this Court accept their Stipulation of Undisputed Facts when considering the parties' cross motions for summary judgment. The Stipulation is filed pursuant to the Court's Amended Scheduling Order, Dkt. 60, and will obviate the need for witness testimony on certain factual issues on which the parties agree and will therefore streamline summary judgment proceedings. The parties do not agree that each of the stipulated facts below is material to the legal issues presented in this case.

**DCF**

1.  DCF consists of several discrete program offices tasked with overseeing the delivery of services. These include the Child Welfare Program, which oversees child welfare;

1

SAMH, the substance abuse and mental health program; and ACCESS, which maintains oversight of public benefits including TANF, Medicaid, and the Supplemental Nutrition Assistance Program ("SNAP," formerly known as food stamps).

**The TANF Program**

2. Florida's TANF program is set out in Chapter 414, Florida Statutes. The program is "designed to—(1) provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives; (2) end the dependence of needy parents on government benefits by promoting job preparation, work, and marriage; (3) prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies; and (4) encourage the formation and maintenance of two-parent families." 42 U.S.C. § 601(a)(1)-(4). A "key principle" of the TANF program is that "[w]elfare reform should help move people from welfare to work," and thus participants "are expected to engage in work activities and develop the capability to support themselves." 64 Fed. Reg. 17720, 17721-22.

3. To participate in TANF, an individual must meet numerous eligibility requirements and complete an extensive application. The application requires disclosure of much personal and private information, including: medical history and information (including, depending upon the gender of the applicant and other factors, pregnancy details, disability details, children's immunization records, and details of recent medical emergencies); living arrangements; social security numbers; funeral plans; family income; life insurance; trust funds; lottery winnings; business assets; gifts; employment history; job-search activities; school-attendance records; proof of participation in school conferences; and proof of cooperation with child-support obligations. Dkt. 19-1. A TANF applicant also must "authorize any bank,

building association, employer, insurance company, real estate company, government agency or any financial institution of any kind or character to disclose to any [DCF agent] full information as to [the applicant's] bank accounts, earnings, insurance policies, property or benefits." *Id*. A TANF applicant must also disclose whether he or she "is fleeing the law due to a felony or probation or parole violation." Dkt. 19-3 at 26. TANF applicants, on pain of criminal prosecution and other penalties, certify that all information submitted is accurate and true and are notified that "information … may be checked by DCF [and other] federal and state agencies." *Id*. at 83.

4. Among other eligibility criteria, a TANF participant must have little or no income. More specifically, the income-related criteria are set out in F.A.C. 65A-4.209.

5. TANF is distributed to the states through a federal block grant and is not an entitlement program. *See* 42 U.S.C. § 601(b); Fla. Stat. § 414.025(2).

6. Participants in the TANF program, unless excused for enumerated and limited reasons, must meet a host of work-search, work, and/or job-training requirements to remain eligible.

7. DCF, which administers the TANF program in Florida along with the Workforce boards, administers the program in six regions, each of which consists of multiple counties.

8. The TANF program is not limited to providing cash assistance. Of the total TANF block grant the State of Florida received from the federal government in state fiscal year 2011-2012, the State allocated approximately $31 million to TANF recipients in the form of direct cash assistance. It allocated approximately $70 million to Florida's Workforce boards for use in job-assistance related activities for TANF-eligible Floridians. And it allocated approximately $20 million for use in child-care services for TANF-eligible Floridians. The

services provided by the Regional Workforce Boards include employability assessments, including the Test for Adult Basic Education ("TABE"), referrals for child care, and payments to help recipients purchase items they need in order to start work, such as uniforms or scrubs. In some cases, the Workforce Boards provide gas cards or bus tickets to help people reach employers to interview or fill out applications. They also provide workshops on interest and ability assessments, resume drafting, and interviewing, all of which focus on the needs of the TANF population. Regional Workforce Boards provide computers, phones, and fax machines to facilitate the job search process. The Regional Workforce Boards also have some funding for Workforce education and training for adult TANF recipients. The Workforce Boards are able to refer individuals to DCF's substance abuse and mental health program ("SAMH"), if the individual so requests or if Workforce deems it appropriate. A percentage of the federal TANF block grant is dedicated to substance abuse and mental health services.

9. In addition, the Office of Early Learning covers daycare expenses for TANF families to enable parents to seek work or attend Workforce training.

10. In Florida, and except as otherwise provided in Fla. Stat. § 414.105, an individual may participate in TANF for a lifetime maximum of 48 months, although those months need not be consecutive. In calendar years 2010 and 2011, the average stay on TANF cash assistance for new assistance groups was approximately five months, and participants frequently leave and return to TANF.

11. For a family of two, like Plaintiff Lebron and his son, the maximum TANF cash benefit (known as Temporary Cash Assistance, or TCA) is currently $241.00 per month, pursuant to § 414.095, Fla. Stat.

**Fla. Stat. § 414.0652**

12. Section 414.0652, Florida Statutes, originated as House Bill 353. The Senate Companion Bill to HB 353 was SB 556. The House passed HB 353 on April 26, which was then sent in messages to the Senate. The Senate passed the bill on May 5, 2011. HB 353 was signed into law by Governor Rick Scott on May 31, 2011, and was implemented by DCF from July 1, 2011, until October 24, 2011, when this Court entered a Preliminary Injunction. Dkt. 33.

13. Pursuant to section 414.0652, all applicants who are otherwise qualified for Temporary Cash Assistance under TANF were required to provide, to a DCF-approved laboratory, a sample of their urine to be tested for the following substances: Amphetamines, Methamphetamines, Cannabinoids (THC), Cocaine, Phencyclidine (PCP), Opiates, Barbiturates, Benzodiazepines, Methadone, and Propoxyphene. Applicants were advised that, if they were taking any prescription or over-the-counter medications, they could inform the laboratory of their use of those medications.

14. Individuals already receiving TCA when section 414.0652 was implemented on July 1, 2011, were not required to undergo drug testing; nor were individuals who had applied before July 1, 2011, whose applications remained pending on July 1. Individuals who participated in, or applied for, TANF prior to July 1, 2011, and who later filed a new application after that date, were required to pass a drug test as a condition of participation in TANF. The law also did not apply to individuals not seeking TANF benefits but participating in SNAP (food stamp), Medicaid, or the Refugee Assistance Program.

15. Under section 414.0652, DCF is required to "[p]rovide notice of drug testing to each individual at the time of application," to "advise the individual that drug testing will be conducted as a condition for receiving TANF benefits," and to "advise[] that the required drug testing may be avoided if the individual does not apply for TANF benefits." Fla. Stat.

5

§414.0652(2)(a). Each "individual to be tested [must] sign a written acknowledgment that he or she has received and understood [this] notice and advice." *Id.* at (2)(e).

16. Drug test results were to be provided directly to the regional DCF office responsible for that applicant's eligibility determination.

17. Through incorporation of Florida's Drug Free Workplace Act, § 414.0652(1), Fla. Stat., the TANF drug-test results "are confidential … and may not be used or received in evidence, obtained in discovery, or disclosed in any public or private proceedings," § 112.0455(11)(a), Fla. Stat. Effective March 6, 2012, DCF adopted Fla. Admin. Code Ch. 65A-4.221, which states: "An individual subject to drug testing under Section 414.0652, F.S., who tests positive for controlled substances on a drug test required by such law, will be notified by the Department of a list of licensed substance abuse treatment providers available in the area in which the individual resides. The substance abuse treatment provider must meet the requirements of Section 397.401, F.S., and be licensed by the Department. Positive drug test results obtained by the Department pursuant to Section 414.0652, F.S., will not be reported to the Florida Abuse Hotline or to law enforcement entities or officers."

18. Under section 414.0652, drug testing was required to be done in a manner that "[a]ssure[s] each individual being tested a reasonable degree of dignity while producing and submitting a sample for drug testing, consistent with the state's need to ensure the reliability of the sample." Fla. Stat. §414.0652(2)(f). The statute requires drug-testing procedures consistent with Florida's Drug Free Workplace Act (DFWA), *id.* §§414.0652(1), 112.0455, which in turn requires, by incorporation of administrative rules, *id.* §112.0455(13)(a), that "[p]rocedures for collecting urine specimens shall allow individual privacy unless there is reason to believe that a

particular individual intends to alter or has altered or substituted the specimen to be provided," Fla. Admin. Code. Ch. 59A-24.005(3)(b).

19. All non-drug testing eligibility factors were determined before an applicant was directed by DCF to undergo testing. Applicants were then required to return within ten days with a negative result in order to finalize the application. Therefore, under the law, no applicant deemed otherwise ineligible for TANF benefits at the time of this initial eligibility determination was required to undergo a drug test.

20. All TANF applicants were responsible for the up-front costs for the drug test. For the four months the statute was enforced, most tests cost between $24 and $45, depending upon the location of the lab and the lab company.

21. At various points during the program's implementation, some counties had no DCF-approved testing sites. These included:

- Baker County: Lacked a site between 7/7 and 7/19 and between 8/11 and 9/7.
- Bradford County: Lacked a site between 7/7 and 7/19.
- Calhoun County: Lacked a site between 7/7 and 7/18.
- Clay County: Lacked a site between 7/7 and 7/19.
- Desoto County: Lacked a site between 7/7 and 7/18 and between 8/15 and 9/7.
- Dixie County: Lacked a site between 7/7 and 8/2.
- Franklin County: Lacked a site between 7/7 and 7/18.
- Gadsden County: Lacked a site between 7/7 and 7/18.
- Gilchrist County: Lacked a site between 7/7 and 8/4.
- Glades County: Lacked a site between 7/7 and 7/18 and between 8/24 and 10/26.
- Gulf County: Lacked a site between 7/7 and 7/18.
- Hamilton County: Lacked a site between 7/7 and 8/4 and between 8/24 and 10/26.

- Hardee County: Lacked a site between 7/7 and 7/18.

- Hendry County: Lacked a site between 7/7 and 7/18 and between 8/24 and 10/11.

- Holmes County: Lacked a site between 7/7 and 7/18.

- Jackson County: Lacked a site between 7/7 and 7/18.

- Jefferson County: Lacked a site between 7/7 and 7/18.

- Lafayette County: Lacked a site between 7/7 and 8/4.

- Levy County: Lacked a site between 7/7 and 7/18.

- Liberty County: Lacked a site between 7/7 and 7/18.

- Madison County: Lacked a site between 7/7 and 7/19 and between 8/16 and 10/26.

- Monroe County: Lacked a site between 7/7 and 7/18 and between 8/24 and 9/19.

- Santa Rosa County: Lacked a site between 7/7 and 7/18.

- Suwannee County: Lacked a site between 7/7 and 7/19.

- Taylor County: Lacked a site between 7/7 and 7/19.

- Union County: Lacked a site between 7/7 and 7/19 and between 8/11 and 9/7.

- Wakulla County: Lacked a site between 7/7 and 7/18.

- Walton County: Lacked a site between 7/7 and 7/18.

- Washington County: Lacked a site between 7/7 and 7/18.

Otherwise, there was at least one DCF-approved site in each county during the entire relevant period. For purposes of TANF eligibility, DCF accepted test results only from DCF-approved laboratories.

22. Pursuant to Section 414.0652(1)(b), if an individual tests positive, he or she is ineligible to receive TANF benefits for one year after the date of the positive test, except that the individual may reapply for those benefits after six months if the individual can document the successful completion of an approved substance abuse treatment program.

8

23. If a parent is deemed ineligible for TANF benefits as a result of failing a drug test conducted under the statute, an appropriate protective payee shall be designated to receive benefits on behalf of the child. That designated individual must also undergo drug testing before being approved to receive benefits on behalf of the child.

24. During the time the drug testing program was in effect, 108 TANF applicants tested positive for drug use. Of those 108 individuals, 44 tested positive for cannabinoids (marijuana); 24 for benzodiazepines; 10 for cocaine; 9 each for barbiturates and opiates; 10 for methadone; 3 for propoxyphene; 5 for amphetamines or methamphetamines; and 2 for PCP. The total number of positives is greater than 108 because some applicants tested positive for more than one drug. During that same time period, 3,938 individuals submitted negative drug test results. And during that same time period, there were 2,306 individuals from whom DCF did not receive drug test results but who were otherwise eligible for TCA. Because of the Court's injunction, DCF ended the testing program statewide, approved all applications that had been pended for drug testing, and approved TCA benefits for individuals who had tested positive, notwithstanding their positive drug test results.

25. After the Preliminary Injunction was entered, DCF restored TCA benefits to approximately 1,727 families, and reimbursed TANF applicants for their drug tests, to the extent they had not already been reimbursed.

**Plaintiff Luis Lebron**

26. Plaintiff Luis Lebron ("Lebron") is a United States Citizen who resides in Orlando, Florida.

27. Lebron is a thirty-six year old, single father with sole custody of his six-year-old son. He lives with, and cares for his disabled mother.

28. Lebron is a veteran of the United States Navy.

29. When he filed suit, Lebron was a full-time student at the University of Central Florida. He graduated in December 2011 with a bachelor's degree in Finance. He indicates he plans to pursue "advanced degrees in finance," including a Masters and a Ph.D. He is currently enrolled in on-line post graduate courses at LaSalle University.

30. Lebron and his son were continuously receiving TANF, food stamp benefits, and Medicaid coverage, from the entry of the preliminary injunction until the receipt of his first paycheck, which will be two weeks from August 20, 2012. Lebron has, in the past, also received VA benefits and student financial aid. Lebron's son attended preschool paid for by TANF funds. Lebron has received services through his Regional Workforce Board during the periods when he was not in school, and has received gas cards to help him in his work search.

31. While serving in the United States Navy, Lebron underwent drug testing no fewer than three times as required by Department of the Navy, and tested negative each time. In private employment, he was tested no fewer than two times, and tested negative each time. Lebron never objected to these drug tests or raised any concerns of privacy with respect to those particular tests.

32. On July 16, 2011, Lebron applied for TANF. His application was denied on August 25, 2011, for failure to provide documentation of eligibility for benefits, and failure to give proof of a completed drug test.

33. By August 29, 2011, DCF determined that, but for Lebron's undergoing a drug test and returning a negative result, Lebron and his son were eligible for TANF participation. DCF relied on Lebron's representations regarding income, assets, and other information in his application.

34. Lebron executed a form consenting to the drug testing required by section 414.0652. In his Verified Complaint in this case, though, he pled, and averred in his Declaration in Support of a Preliminary Injunction, that he "revoked" any consent he may have previously given.

35. Lebron and his son began receiving TANF benefits shortly after the Preliminary Injunction was entered, and continuously received these benefits at all times during the pendency of this action until August, 2012. His TANF benefits have been closed out effective August 31, 2012.

36. Pursuant to the TANF program's requirements, to be eligible for TANF, Lebron must meet work-search requirements unless DCF waives or otherwise excuses compliance with such requirements pursuant to their regulations. Lebron has not systematically excluded from his employment searches companies that drug test.

37. As detailed in F.A.C. 65A-4.205, DCF may provide waivers from work-search responsibilities and other employment-related reporting requirements of TANF, if the TANF recipient is caring for an elderly or ill relative, or a child under a certain age. In January, 2012, at Lebron's request, DCF provided such a waiver to Lebron. Such waivers are temporary and reviewed periodically.

38. Lebron remained unemployed until August 20, 2012, when he started work on a contract basis as an associate accountant for Walt Disney World, through Datrose Business Outsourcing. His employment is temporary, and set to end on February 20, 2013.

39. Lebron may reapply for TANF participation at a later date if he again meets the criteria for TANF participation.

Dated this 10th day of September, 2012

Respectfully submitted:

**For Plaintiff:**
*/s/ Maria Kayanan*
Maria Kayanan (Fla. Bar No. 305601)
mkayanan@aclufl.org
Randall C. Marshall (Fla. Bar No. 181765)
rmarshall@aclufl.org
Shalini Agarwal (Fla. Bar No. 90843)
sagarwal@aclufl.org
ACLU Foundation of Florida, Inc.
4500 Biscayne Blvd., Suite 340
Miami, Florida 33137-3227

Jason Williamson (*pro hac vice*)
jwilliamson@aclu.org
ACLU Foundation
Criminal Law Reform Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-284-7340

Randall C. Berg, Jr. (Fla. Bar No. 318371)
RBerg@FloridaJusticeInstitute.org
Shawn A. Heller (Fla. Bar No. 46346)
Sheller@FloridaJusticeInstitute.org
Florida Justice Institute, Inc.
100 SE Second St., Ste. 3750
Miami, FL 33131-2115
Tel: (305) 358-2081
Fax: (305)358-0910

**For Defendant:**
*/s/ Allen Winsor*
Allen Winsor
Fla. Bar No. 16295
awinsor@gray-robinson.com
GrayRobinson P.A.
301 South Bronough St. Suite 600
Tallahassee, FL 32301
Tel: 850-577-9090; Fax 850-577-3311

Jesse Panuccio
Florida Bar. No. 31401
jesse.panuccio@eog.myflorida.com
General Counsel
Michael Sevi
Fla. Bar No. 60947
michael.sevi@eog.myflorida.com
Assistant General Counsel
Executive Office of the Governor
Room 209
400 S. Monroe St. ,The Capitol
Tallahassee, FL 32399-6536
Tel: 850-488-3439

Lisa Raleigh, Special Counsel
Fla. Bar No. 858498
lisa.raleigh@myfloridalegal.com
Jason Vai (Fla. Bar No. 298824)
Assistant Attorney General
jay.vail@myfloridalegal.com
Dept. of Legal Affairs
PL 01, The Capitol
Tallahassee, FL 32311
850-414-3300; Fax: 850/488-4872

Marion Drew Parker
Florida Department of Children and Families
Fla. Bar No. 676845
Drew_Parker@dcf.state.fl.us
1317 Winewood Blvd.
Building 2, Room 204
Tallahassee, FL 32399-0700
850-921-8675
Fax: 850-922-3947