UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LUIS W. LEBRON,
Individually and as Class Representative,

    Plaintiff,

vs.                                             Case No. 6:11-cv-01473-MSS-DAB

DAVID E. WILKINS, in his official
capacity as Secretary of the Florida
Department of Children & Families,
    Defendant.
_____/

**PLAINTIFFS' RESPONSE TO COURT'S ORDER OF MAY 8, 2013**

Plaintiff LUIS W. LEBRON, individually and as Class Representative, and all class members ("Plaintiffs"), respectfully file their Response to this Court's Order of May 8, 2013, Dkt. 97.

The Eleventh Circuit affirmed this Court's Preliminary Injunction. *See Lebron v. Sec'y, Fla. Dept. of Children & Families*, 710 F.3d 1202 (11th Cir. 2013). This Court then ordered the parties to first, advise the Court "whether any additional issues need to be addressed in legal memoranda in this case"; and second, "specifically identify any contentions not foreclosed by the Eleventh Circuit's decision." Dkt. 97 at 2.

Plaintiffs respectfully advise the Court that (1) no additional issues need to be addressed before a ruling on the merits, as the Court correctly noted that the Eleventh Circuit "made several legal pronouncements that essentially mandate entry of judgment in favor of the Plaintiff at least as to certain key issues[,]" Dkt. 97 at 1; and (2) the State's only contention not entirely foreclosed by the Eleventh Circuit's decision relates solely to whether, since entry of the Preliminary Injunction, the State has met its heavy burden of presenting evidence that would

"warrant suspension of the Fourth Amendment." *Lebron*, 710 F.3d at 1212. Accordingly, final summary judgment and a permanent injunction should be entered for Plaintiffs, barring enforcement of Fla. Stat. § 414.0652.

> I. **No Additional Issues Need Briefing, and the Following Holdings of the Eleventh Circuit are Law of the Case.[1]**
>
> > A. <u>The State Has the Burden of Showing a Substantial Special Need to Suspend the Customary Protections of the Fourth Amendment.[2]</u>

The Eleventh Circuit recognized that "the Supreme Court has unequivocally stated that it is the State which must show a substantial special need to justify its drug testing." *Id*. at 1211 n.6 (citation omitted). It is not the Plaintiffs' affirmative burden "to bring forth evidence refuting the legitimacy of the State's purported special needs for drug testing." *Id.*

The court also confirmed that the Supreme Court recognizes only two "closely guarded" categories of constitutionally permissible suspicionless searches: (1) the "specific risk to public safety by employees engaged in inherently dangerous jobs" (the public safety concern); and (2) "the protection of children entrusted to the public school system's care and tutelage." *Id*. at 1207. Because the State's interests fall outside those two categories, the court rejected the State's asserted special need to drug test TANF applicants, namely that "TANF funds should not be used for drugs as drug use undermines the program's goals of moving applicants into employment and promoting child welfare and family stability." *Id*. at 1211.

As Judge Jordan similarly noted in his concurring opinion, "[i]t is undisputed that a drug test is a search under the Fourth Amendment, and that the government generally has the burden

---

[1] Under the law of the case doctrine, "both district courts and appellate courts are generally bound by a prior appellate decision in the same case." *Thomas v. United States*, 572 F.3d 1300, 1303 (11th Cir. 2009). One recognized exception to the law of the case doctrine, which does not apply here (*see* Section II, *infra*), arises when subsequent evidence is "substantially different." *Westbrook v. Zant*, 743 F.2d 764, 768-69 (11th Cir. 1984).

[2] This Response tracks the sequence of the Eleventh Circuit's key holdings in *Lebron*.

of justifying a warrantless search .... Thus, as the Supreme Court has explained, the government has the burden of establishing a 'special need' for a warrantless and suspicionless drug testing requirement." *Id*. at 1219 (Jordan, J., concurring).[3]

The court also rejected the State's argument that suspicionless testing of TANF applicants was necessary because drug use is "detrimental to the goals of the TANF program," holding instead that:

> [T]he only pertinent inquiry is whether there is a substantial special need for mandatory, suspicionless drug testing of TANF recipients when there is no immediate or direct threat to public safety, when those being searched are not directly involved in the frontlines of drug interdiction, when there is no public school setting where the government has a responsibility for the care and tutelage of its young students, or when there are no dire consequences or grave risk of imminent physical harm as a result of waiting to obtain a warrant if a TANF recipient, or anyone else for that matter, is suspected of violating the law. We conclude that, *on this record*, the answer to that question of whether there is a substantial special need for mandatory suspicionless drug testing is "no."

*Id*. (emphasis added).[4]

Finally, the court held that the State's asserted need to drug test TANF applicants to promote child welfare was not a special need:

> Moreover, none of the State's asserted concerns will be ameliorated by drug testing. While we recognize that Florida has a significant interest in promoting child welfare, the State has presented no evidence that the general welfare of the children in the TANF program is at greater risk absent its drug testing. Nor has the State shown that Florida's children will be better protected because of mandatory drug testing of TANF applicants. As the district court noted, even if a parent tests positive for drugs and is precluded

---

[3]  Because the Sixth Circuit improperly placed the burden on plaintiffs, Judge Jordan rejected the reasoning of the vacated panel opinion in *Marchwinski v. Howard*, 309 F.3d 330, 333-37 (6th Cir. 2002) (reversing preliminary injunction entered by district court and indicating that Michigan pilot program requiring warrantless and suspicionless drug testing of welfare applicants was likely constitutional), *vacated on grant of rehearing en banc*, 319 F.3d 258 (6th Cir. 2003), *decision of district court affirmed by equally divided vote*, 60 Fed. Appx. 601 (6th Cir. 2003) (*en banc*). 710 F.3d at 1219. The *Marchwinski* panel opinion thus carries no persuasive value, contrary to the State's repeated arguments to the contrary.

[4]  *See* Section II, *infra*, regarding the State's subsequent failure to develop a sufficient evidentiary record.

> from receiving TANF funds, the TANF program has no impact on the familial and custodial relationships of its would-be participants. Again, there is no evidence that there is greater drug use and child abuse within the population of economically disadvantaged families who participate in the TANF program. However, even if child neglect or abuse, for whatever reasons, impacts the lives of families in the TANF program, Florida has a separate, well-established and comprehensive statutory, administrative and judicial scheme codified in Chapter 39 of the Florida Statutes, which governs Florida's obligation to protect children from child abuse, abandonment and neglect.

*Id.* at 1213.

### B. Urinalysis Testing of TANF Applicants is a "Search" Under the Fourth Amendment.

The court's opinion confirmed that, as a matter of law, the State-ordered urinalysis testing of TANF applicants is indeed a search: "It is undisputed and well-established that government mandated drug testing is a 'search' within the meaning of the Fourth Amendment." *Id.* at 1206. Further, "[o]rdinarily, to be reasonable, a search must be based on individualized suspicion of wrongdoing." *Id.* (citation omitted). The court rejected the State's argument that private sector practices have lessened Plaintiffs' expectation of privacy in their bodily fluids. *Id.* at 1216 (citing *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 617 (1989) ("Because it is clear that the collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable, ... these intrusions must be deemed searches under the Fourth Amendment.")).

### C. Plaintiffs Did Not Consent to the State's Search of Their Urine.

The Court of Appeals soundly rejected the State's argument that TANF applicants "consented" to a urinalysis when they applied for TANF: "[A] TANF applicant's 'consent' to the testing by signing a form waiving his constitutional rights amounts to nothing more than 'submission to authority rather than ... an understanding and intentional waiver of a constitutional right.'" *Id.* at 1215 (citation omitted).

4

Further, the Eleventh Circuit held that the unconstitutional conditions doctrine renders any so-called "consent" involuntary: "Moreover, the mandated 'consent' the State relies on here, *which is not freely and voluntarily given*, runs afoul of the Supreme Court's long-standing admonition that the government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected interests.'" *Id*. at 1217 (citing *Perry v. Sindermann* 408 U.S. 593, 597 (1972) (emphasis added)).

### D.  *Wyman v. James*[5] Does Not Inform the Consent Analysis.

The Eleventh Circuit unequivocally agreed with this Court in holding that the State's reliance on *Wyman* was "misplaced." 710 F.3d at 1215. First, the home visits at issue in *Wyman* were not searches. *Id*. at 1216. Second, this case is distinguishable, as "*Wyman* was decided *outside the context of drug testing* and the Supreme Court has well-established precedent that governs the reasonableness of drug testing in the event a court is called upon to balance the competing government and individual privacy interests." *Id.* at 1216 n.10 (emphasis added).[6]

### E.  The Demonstration Project is Relevant, Competent Evidence that "Hinders the Validity of the State's Asserted Special Needs."[7]

Contrary to the State's arguments, *see* Dkt. 85 at 14 n.12, the Demonstration Project is relevant, competent evidence. Although the Court of Appeals held it is the State's burden to present evidence of a special need, and not the Plaintiffs' burden to "bring forth evidence refuting the legitimacy of the State's purported special needs for drug testing," 710 F.3d at 1211 n.6, it found "no error in the district court's finding that the results of the Demonstration Project

---

[5]  *Wyman v. James*, 400 U.S. 309 (1971).
[6]  The Eleventh Circuit also held that if the State fails to show a special need, the court does not even reach the balancing test: "Moreover, because we have already concluded that the State failed to establish a 'substantial special need' for mandatory suspicionless drug testing, we need not balance any government interest against individual privacy interests, and thus *Wyman*'s reasonableness analysis is irrelevant here." 710 F.3d at 1216 n.10.
[7]  *Id*. at 1211 n.6.

hinders rather than supports the validity of the State's asserted special needs." *Id.* The Eleventh Circuit discussed the Demonstration Project at length, quoting this Court's observation that the State "failed to address the only competent evidence in the record about drug use among TANF recipients." *Id*.

> II. **The Eleventh Circuit Left Open the Very Narrow Question of Whether the State Might Develop Sufficient Evidence in this Court to Establish a Special Need.**

The Eleventh Circuit held that, at the preliminary injunction stage, "the State failed to offer *any factual support* or to present *any empirical evidence of a 'concrete danger'* of illegal drug use *within Florida's TANF population*." *Id.* at 1211 (emphases added). In his concurrence, Judge Jordan noted that the appeal was from a preliminary injunction; the Court of Appeals was therefore not "making any definitive legal pronouncements about the ultimate constitutionality of Fla. Stat. § 414.0652 ... *on an undeveloped record* ... ." 710 F.3d at 1218 (emphasis added).

The State's evidence filed after the Preliminary Injunction issued likewise fails to establish a special need to impose suspicionless drug testing on TANF applicants in Florida. As Plaintiffs argued at length in their summary judgment filings, the State's evidence consists almost entirely of irrelevant or inadmissible opinions, or irrelevant facts.[8] As reflected by these filings, the State's evidence now is essentially no different from its evidence at the preliminary injunction stage, which this Court properly rejected "as irrelevant or non-persuasive." 710 F.3d at 1211 n.6. Moreover, none of the evidence filed by the State speaks to "the State's *need* for suspicionless drug testing." *Id*. (emphasis added).

---

[8] *See* Plaintiffs' Motion for Summary Judgment, Dkt. 78; Plaintiffs' Response to Defendant's Motion for Summary Judgment, Dkt. 82; Plaintiffs' Reply in Support of their Motion for Summary Judgment, Dkt. 84, and Plaintiffs' Motions in Limine, Dkts. 70 (Motion in Limine to Exclude Defendant's Expert D. Mark Wilson), 71 (Motion in Limine to Exclude Defendant's Expert Witness Avram Mack, M.D.), and 80 (Motion in Limine to Exclude Dkts. 79-13 through 79-15).

But most importantly, the court's opinion renders futile the State's extensive attempts to demonstrate the rate of drug use within the TANF population. Even had the State presented reliable, admissible data on that issue, which it did not, the Eleventh Circuit minimized—to the point of irrelevance—any such evidence:

> In pointing out that there is no evidence of a demonstrated problem of drug use within Florida's TANF population to support the State's special needs argument, *we in no way are suggesting that evidence of drug use within the TANF population would, in and of itself, suffice to establish a substantial special need for mandatory drug testing*. Nor do we read any of the Supreme Court's drug testing cases to say that empirical evidence of drug use is sufficient to establish a special need. Instead, all that the Court has said of actual evidence of drug use is that *it is neither necessary nor sufficient to establish the type of substantial special needs* that permit a drug testing regime to fall within the closely guarded category of permissible suspicionless searches.

*Id*. at 1212 n.7 (emphases added).

### III.   Conclusion

Based on the Eleventh Circuit's decision in *Lebron*, and the arguments and authorities cited in Plaintiffs' summary judgment filings and their responses to the State's cross motion for summary judgment, Plaintiffs respectfully request that this Court enter final summary judgment in their favor, deny the State's Motion for Summary Judgment, and permanently enjoin Defendant from enforcing section 414.0652.

Dated this 22nd day of May 2013

Respectfully submitted,

*/s/ Maria Kayanan*  
*Maria Kayanan* (Fla. Bar No. 305601)  
mkayanan@aclufl.org  
Randall C. Marshall (Fla. Bar No. 181765)  
rmarshall@aclufl.org  
Shalini Agarwal (Fla. Bar No. 90843)  
sagarwal@aclufl.org  

**ACLU Foundation of Florida, Inc**.  
4500 Biscayne Blvd., Suite 340  

Randall C. Berg, Jr. (Fla. Bar No. 318371)  
RBerg@FloridaJusticeInstitute.org  
Shawn A. Heller (Fla. Bar No. 46346)  
Sheller@FloridaJusticeInstitute.org  

**Florida Justice Institute, Inc**.  
100 SE Second St., Ste. 3750

Miami, Florida 33137-3227
Tel: 786-363-2700; Fax: 786-363-3108

Miami, FL 33131-2115
Tel: (305) 358-2081; Fax: (305)358-0910

Jason Williamson (pro hac vice)
jwilliamson@aclu.org
**ACLU Foundation**
Criminal Law Reform Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-284-7340

## CERTIFICATE OF SERVICE

       I hereby certify that on May 22, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which automatically serves all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By:  */s/ Maria Kayanan*